**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

**Brenda Pearce,** *et al.*,

            **Plaintiffs,**

v.                                                             Case No. 3:10-cv-282
                                                                Judge Thomas M. Rose

**Faurecia Exhaust Systems, Inc.,**

            **Defendant.**

---

**ENTRY AND ORDER GRANTING IN PART MOTION OF
DEFENDANT FAURECIA EXHAUST SYSTEMS, INC. FOR
SUMMARY JUDGMENT**. DOC. 19.

---

Pending before the Court is the Motion of Defendant Faurecia Exhaust Systems, Inc. ("Faurecia") for Summary Judgment. Doc. 19. The instant case involves allegations by seventy-five Plaintiffs that Defendant Faurecia terminated their employment in violation of the Workers Adjustment and Retraining Notification Act, 29 U.S.C. §§ 2101 *et seq.* ("WARN Act") . Doc. 3, at ¶¶ 92-104. Following the close of Faurecia's Troy West Plant, Plaintiffs were given the opportunity to transfer to open positions at the Troy East Plant instead of being terminated. *Id.* at ¶¶ 84-85. Less than one year later, the Troy East Plant had to shut down a majority of its operations, leaving the Plaintiffs without employ. *Id.* at ¶¶ 94-98. Pearce's complaint asserts a claim for violation of the WARN Act by Defendant's failure to give a 60-day notice of plant closing or mass layoff and state-law claims for promissory estoppel, breach of contract and fraud. Doc. 3. Defendant Faurecia moves for summary judgment on the claim that they are

entitled to invoke the "unforeseeable business circumstances" exception to the sixty days' notice, required by 29 U.S.C. § 2102(b)(2)(A). Doc. 19. Because the evidence produced in discovery leaves no question of fact for a jury as to the applicability of the "unforeseeable business circumstance" exception to the WARN Act, the Court will grant the motion with regard to Plaintiffs' WARN Act claim.

**I.      Factual Background**

Brenda Pearce was hired by Faurecia Exhaust Systems as a full-time employee in August,1996, and continued to work there until she was permanently laid off on or about May 8, 2009.[1] Doc. 3, at ¶ 3. Faurecia operated two exhaust system plants in Troy, Ohio that had manufacturing lines which supplied Chrysler and General Motors. Doc. 19, at *2. Faurecia is a "just-in-time" manufacturer, meaning that it produces products for its customers on demand, when the customer needs the product. *Id.* at *3.

Plaintiff Pearce worked at the Troy West Plant and was given notice in February, 2008 that Troy West would close permanently in August, 2008 for economic reasons unrelated to this case. Doc. 19, Exh. 18, at ¶ 20 ("Plenzler Aff."). On February 13, 2008, Faurecia representatives, led by Human Resources Manager John Plenzler, met with the Troy West workforce and used a Powerpoint presentation to explain the options available to these employees. Plenzler Aff., at ¶¶ 21-22; Doc. 19, Exh. 9, at ¶¶ 75-76, 82 ("Pearce Dep."). This Powerpoint presentation reflects what was discussed by Faurecia with its employees that day. Pearce Dep., at ¶¶ 81-82. Slide Eight of the Powerpoint specifically showed the two options available to Troy West employees: 1) to participate in the company's "Mobility Policy,"

---

[1]Even though they have varying start and end dates, all plaintiffs in this case were, at some point, full-time employees working for Faurecia Exhaust Systems who were laid off on or before May 8, 2009.

whereby

employees could apply for positions at other Faurecia locations; or 2) to accept benefits under the

Trade Adjustment Assistance Act and a "Stay Bonus." Plenzler Aff., at ¶¶ 23-24. Further, the Powerpoint stated that "Employees that are not selected or who do not wish to transfer to another Faurecia facility will be eligible for a Stay Bonus." Pearce Dep., at ¶¶ 81-88. These options were also displayed in documents posted on Company billboards. *Id.* at ¶¶ 101-102.

Under the Mobility Policy, employees understood that they would not be entitled to a Stay Bonus if they transferred to another Faurecia facility. Pearce Dep., at ¶¶ 88-89. The Stay Bonus was only available to Troy West employees who worked until the plant closed at the end of August, 2008. Plenzler Aff., at ¶ 24. Plaintiff Pearce submitted an application, received an offer, and transferred to another position at Troy East prior to the close of Troy West. Pearce Dep., at ¶¶ 59-60, 83, 89-90. Thus, Pearce participated in the Mobility Policy. The Troy West plant closed its doors at the end of August, 2008, as scheduled. Plenzler Aff., at ¶ 27. After transferring from Troy West in July, 2008, Plaintiff Pearce immediately began working at the Troy East plant. Plenzler Aff., at ¶ 26; Pearce Dep., at ¶¶ 89-90.

On April 30, 2009, Chrysler filed for Chapter 11 bankruptcy in the United States Bankruptcy Court for the Southern District of New York. Plenzler Aff., at ¶ 5. Faurecia learned of Chrysler's bankruptcy at the time of filing, with no advance notice. *Id.* Further, the date that Chrysler would exit bankruptcy was unknown at the time of filing. *Id.* at ¶ 9. Chrysler also announced that it would shut down facilities, as well as close and sell multiple plants. *Id.* at ¶ 11.

The employees at Chrysler's Sterling Heights operations, which Faurecia's Troy East supplied,

were sent home early on April 20, 2009. *Id.* at ¶ 11. Because of this, no additional orders went through the electronic portal between Chrysler and Faurecia and the plant had no orders to fulfill from Chrysler. *Id.* at ¶ 12. The result was that seventy-five percent of Troy East's employees had no work for the foreseeable future. *Id.* Prior to Chrysler's April 30 announcement, Faurecia had not contemplated a production shut-down. *Id.* at ¶ 19.

The next day, May 1, 2009, Faurecia gave verbal notice to the employees that Troy East would be closing its manufacturing operations. *Id.* at ¶¶ 5, 14. Over the next several days, Faurecia's management implemented a full closing of the production lines, which included examining the seniority of employees on those lines to determine whether they had the ability to "bump" employees in the non-Chrysler supplying sectors. *Id*. at ¶ 15. Faurecia issued a notice to the State of Ohio and the local government taxing entity that the company was closing certain Troy East operations. *Id.* at ¶ 16. Faurecia then gave written notice to the employees on or about May 7, 2009, seven days after Chrysler filed for bankruptcy. *Id.* at ¶ 16. This WARN notice informed employees that they would be laid off, stating that:

> We are giving less than 60 days' notice of the mass layoff/shutdown due to the unforeseen and unprecedented announcement that Chrysler is closing its assembly plants which accompanied Chrysler's announcement of its bankruptcy filing, the unforeseen and unprecedented decline in our exhaust assembly operating unit business, and the rapidly growing uncertainty regarding our customer base; circumstances which are sudden, dramatic, unexpected, and outside of Faurecia's control.

Pearce Dep., Exh. 52; Plenzler Aff., at ¶ 16.

Plaintiffs filed a complaint in this Court on July 16, 2010. This was amended on September 22, 2010. The Amended Complaint asserts federal question jurisdiction, with supplemental jurisdiction over state law claims: "Jurisdiction is proper in this Court pursuant to 28 U.S.C. §1331, 28 U.S.C. §1367, and 29 U.S.C. §2104(a)(5), because Plaintiffs' claims arise under the Workers Adjustment and Retraining Notification Act ("WARN Act"), 29 U.S.C. §§

2101-2109." Doc. 3, ¶ 1.

## II. Summary Judgment Standard

The standard of review applicable to motions for summary judgment is established by Federal Rule of Civil Procedure 56 and associated case law. Rule 56 provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Alternatively, summary judgment is denied "[i]f there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Hancock v. Dodson*, 958 F.2d 1367, 1374 (6th Cir. 1992) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)). Thus, summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party seeking summary judgment has the initial burden of informing the court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions and affidavits which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323. The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (quoting Fed. R. Civ. P. 56(e)).

Once the burden of production has shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. In other words, it is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec.*

*Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Thus, Rule 56 "requires the nonmoving party to go beyond the pleadings" and present some type of evidentiary material in support of its position. *Celotex Corp.*, 477 U.S. at 324.

In determining whether a genuine issue of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in the favor of that party. *Anderson*, 477 U.S. at 255. If the parties present conflicting evidence, a court may not decide which evidence to believe by determining which parties' affiants are more credible. 10A Wright & Miller, Federal Practice and Procedure, § 2726. Rather, credibility determinations must be left to the fact-finder. *Id.*

Finally, in ruling on a motion for summary judgment, "[a] district court is not . . . obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989). Thus, in determining whether a genuine issue of material fact exists on a particular issue, the court is entitled to rely upon the Rule 56 evidence specifically called to its attention by the parties.

**III.   Legal Analysis**

Plaintiffs' first cause of action purports to arise under the WARN Act, 29 U.S.C. §§ 2101 *et seq.* Doc. 3, at ¶¶ 92-104. The WARN Act requires an "employer" to provide "affected employees" with sixty days' notice prior to "plant closings" or "mass layoffs." *See* 29 U.S.C. § 2102(a). In the instant case, there is no dispute that: Defendant Faurecia is an "employer" within the meaning of 29 U.S.C. § 2101(a)(1); Plaintiffs, are "affected employees" within the meaning of 29 U.S.C. § 2101(a)(5); a "mass layoff," as defined by 29 U.S.C. § 2101(a)(2) and (3), occurred; and Defendant Faurecia failed to give sixty days' notice of the mass layoff as required by 29

U.S.C. § 2102(a).

Instead, Defendant Faurecia moves for summary judgment on the claim that they are entitled to invoke the "unforeseeable business circumstances" exception to the sixty days' notice, provided in 29 U.S.C. § 2102(b)(2)(A). This exception states that:

> An employer may order a plant closing or mass layoff before the conclusion of the 60-day period if the closing or mass layoff is caused by business circumstances that were not reasonably foreseeable as of the time that notice would have been required.

29 U.S.C. § 2102(b). In addition, the exceptions contained in 29 U.S.C. § 2102(b) must be strictly construed. *Roquet v. Arthur Andersen LLP*, 2004 U.S. Dist. LEXIS 5150 (N.D. Ill. 2004). "'Because the WARN Act is remedial legislation, its exceptions are to be construed narrowly' and the 'employer relying on the exception bears the burden of persuasion.'" *Local Union 7107 v. Clinchfield Coal Co.*, 124 F.3d 639, 640-41 (4th Cir. 1997).

Therefore, in order to fall under the exception contained in 29 U.S.C. § 2102(b)(2)(A), Faurecia must prove two elements: (1) that the circumstances complained of were unforeseeable; and (2) that the circumstances complained of actually caused the mass layoff or plant shutdown. *In re: Advanced Accessory Sys., LLC*, 443 B.R. 756, 763-64 (E.D. Mich. 2011) (Bankr. E.D. Mich. 2011) (citing *Gross v. Hale-Halsell Company*, 554 F.3d 870, 875 (10th Cir. 2009)). Here, Plaintiffs only challenge the "unforeseeability" prong.

The Department of Labor "refuses to classify certain types of circumstances as *per se* unforeseeable and suggests that courts examine each case on its own merits to determine whether the employer in the exercise of 'commercially reasonable business judgment' could have foreseen the particular circumstances that caused the closing" sixty days prior to the mass layoff. *Watson v. Michigan Industrial Holdings, Inc.*, 311 F.3d 760, 764 (6th Cir. 2002). *See also Hotel Employees & Rest. Employees Int'l Union Local 54 v. Elsinore Shore Assocs.*, 173 F.3d 175, 180

(3d Cir. 1999); *Loehrer v. McDonnell Douglas Corp.*, 98 F.3d 1056, 1060 (8th Cir. 1996).

Further, the Department of Labor has provided that:

> The test for determining when business circumstances are not reasonably foreseeable focuses on an employer's business judgment. The employer must exercise such commercially reasonable business judgment as would a similarly situated employer in predicting the demands of its particular market. The employer is not required, however, to accurately predict general economic conditions that also may affect demand for its products or services.

20 C.F.R. § 639.9(b)(2).

Moreover, a "sudden, dramatic, and unexpected action or condition outside the employer's control" is an important indicator of a business circumstance that is not reasonably foreseeable. 20 C.F.R. § 639.9(b)(1). One such circumstance that may be unforeseeable is "[a] principal client's sudden and unexpected termination of a major contract with the employer." *Id. See also Watson*, 311 F.3d at 766 (concluding that the unforeseeable loss of a major client was "well within the unforeseeable business circumstance exception."). Indeed, "a company will be excused from WARN liability if, when confronted with potentially devastating occurrences, it reacts as would reasonable employers within its own market." *Loehrer*, 98 F.3d at 1061.

Finally, courts have routinely granted summary judgment when there is no genuine issue of material fact that a mass layoff or plant closing was caused by unforeseeable business circumstances. *See Watson v. Michigan Indus. Holdings, Inc.*, 311 F.3d 760 (6th Cir. 2002); *In re: Advanced Accessory Sys., LLC*, 443 B.R. 756 (E.D. Mich. 2011); *Gross v. Hale-Halsell Co.*, 554 F.3d 870 (10th Cir. 2009).

In the instant case, Defendant's Motion for Summary Judgment provides the Court with a litany of uncontested support for invoking the "unforeseeable business circumstances" exception to the WARN Act, specifically that:

· On April 30, 2009, Chrysler filed for bankruptcy. (Plenzler Aff., at ¶ 5).

- Faurecia learned of Chrysler's bankruptcy at the time of filing, with no advance notice. (Plenzler Aff., at ¶ 5).

- Named Plaintiff Pearce and other Plaintiffs learned of Chrysler's filing for bankruptcy on the same day of the filing. (Pearce Dep., at ¶ 49; Sharp Dep., at ¶¶ 23, 39; Watts Dep., at ¶¶ 22–23; Manson Dep., at ¶ 15).

- Plaintiffs do not claim that they knew when Chrysler would exit bankruptcy status. (Pearce Dep., at ¶¶ 54-56; Akhter Dep., at ¶ 16).

- On May 1, 2009, Faurecia gave verbal notice to these employees that Troy East wold be closing its manufacturing operations. (Plenzler Aff., at ¶¶ 5, 14).

- Faurecia issued a notice to the State of Ohio and the local government taxing entity that the company was closing certain Troy East operations. (Plenzler Aff., at ¶ 16).

- On or about May 7, 2009, Faurecia gave written notice to its employees that they would be laid off. (Plenzler Aff., at ¶ 16).

Based on these assertions, the Court finds that no reasonable juror could conclude other than that Defendant Faurecia has met the burden for its affirmative defense under the "unforeseeable business circumstances" exception of the WARN Act.

Rather than contesting any of these assertions, Plaintiffs attempt to show that there exists a genuine issue of material fact as to the foreseeability of Chrysler's bankruptcy by offering evidence supposedly showing actual knowledge on the part of Faurecia or by requesting judicial notice that a reasonable and similarly situated employer would have been able to predict the Chrysler bankruptcy.

Plaintiffs attempt to show a genuine issue of material fact as to foreseeability by producing the testimony of Plaintiffs Akhter and Pearce. According to his deposition, Akhter went to the Faurecia Human Resources office to pick up a check stub several weeks prior to Chrysler's bankruptcy. Akhter Dep., at ¶¶ 21-22. He allegedly saw stacks of envelopes that bore a striking resemblance to the layoff notification letters sent out May 7, 2009. *Id.* Mr. Akhter concedes that he neither opened nor read the letters, but rather he speculates that these letters

must have been layoff notices. *Id.* at ¶ 22.  Plaintiffs apparently did not utilize discovery to learn who drafted these letters and depose them ascertain their contents.

Further, Plaintiffs provide affidavit testimony from Plaintiff Pearce that "rumors" circulated that Chrysler intended to file bankruptcy and that employees were "nervous" about their job implications.  Pearce Aff., at ¶ 12.

Speculation and rumors are insufficient as a matter of law to show a genuine issue of material fact to survive summary judgment.  *Staunch v. Continental Airlines, Inc.*, 511 F.3d 625, 628-29 (6th Cir. 2008) ("It is not sufficient for the party opposing summary judgment to present a 'mere scintilla' of evidence; the evidence must be such that a reasonable jury could find in her favor."); *Green v. Schaeffer's Inv. Research, Inc.*, 2012 U.S. Dist. LEXIS 26136, at *34 (S.D. Ohio Feb. 29, 2012) (Weber, J.) (citation omitted) ("Plaintiff's speculation provide no basis to withstand summary judgment."); *Lockett v. Zatko*, 2011 U.S. Dist. LEXIS 132484, at *22 (N.D. Ohio Nov. 16, 2011) ("Plaintiff's 'conclusory allegations, speculation, and unsubstantiated assertions' about Zatko's involvement are not evidence and cannot survive summary judgment.") (citing *Gooden v. City of Memphis Police Dep't*, 67 Fed. Appx. 893, 895 (6th Cir. 2003)). Accordingly, Akhter's speculation and the rumors Pearce heard are not evidence sufficient to survive summary judgment.

Next, Plaintiffs ask the Court to take judicial notice of the allegations that:  (A) "Chrysler's impending bankruptcy was common knowledge in early 2009" and (B) a 2008 recession "was resulting in decreased sales for automobiles, and that these decreased sales would likely result in several, if not all, of the 'big three' American automakers filing bankruptcy." Doc. 25, at *11.  In order for a court to take judicial notice of a fact, a party must supply a reliable source of verification for the fact.  *Weinstein's Fed. Evid.* § 201.12.  Judicial notice of an

adjudicative fact is appropriate where the fact is "not subject to reasonable dispute because it (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). The Court finds that Plaintiff Pearce's affidavit testimony, standing alone, achieves neither of these two criteria.

In support of their request for judicial notice, Plaintiffs merely offer speculative affidavit testimony from Plaintiff Pearce. Plaintiffs then support their argument by stating that:

> [a] business development that has been expected for some time, even when the exact timing is unknown, is not unforeseeable. *See Carpenters Dist. Council*, 15 F.3d at 1282 (holding that the finalization of a proposed merger, even where government approval of the merger was in doubt, was foreseeable.)

Doc. 25, at *11-12.

Plaintiffs' reliance on *Carpenters Dist. Council*, however, is misplaced. Indeed, the Plaintiffs' comparison between a proposed merger, which was known and endorsed by the defendant employer and found to be foreseeable in *Carpenters Dist. Council*, and Chrysler's bankruptcy, of which Defendant Faurecia had no advanced knowledge, is not solid. Further, Plaintiffs point to no case law that suggests that bankruptcies have been held to be foreseeable by other, non-interested companies.

Plaintiffs also state that courts "take judicial notice that there has been a depression, and that a decline of market values is one of its concomitants." Doc. 25, at *11 (citing *Ohio Citizen Action v. City of Englewood*, 6th Cir. Case Nos. 10-3265/3293, 2012 U.S. App. LEXIS 1904, *42). Certainly, a court may take judicial notice of an economic occurrence such as a depression or market downturn. But here, Plaintiffs are not asking the Court to take notice of Chrysler's bankruptcy itself, but rather that it was common knowledge that the bankruptcy was certain to occur. Therefore, judicial notice of these assertions is improper here.

Last, Plaintiffs allege that Defendant Faurecia should have issued conditional notice, as promulgated in 20 C.F.R. § 639.7, whereby Faurecia would notify employees of a possible layoff should Chrysler file for bankruptcy. They contend that this failure to issue conditional notice equates to Faurecia making "absolutely no effort to comply with the sixty days' notice requirement of the [WARN] Act" because "Faurecia should have known that it was more likely than not that Chrysler would file bankruptcy and stop production of automobiles." Doc. 25, at *12-13. Plaintiffs surmise that "[e]ven if Faurecia was unaware of when this [Chrysler bankruptcy] would happen, or even if this would happen, Faurecia could have issued a conditional notice to its employees at the Troy East Plant, explaining that if Chrysler were to file bankruptcy and stop production, Faurecia would also be forced to stop production, which would lead to a mass layoff or shutdown." *Id.*

According to the regulations, conditional notice under WARN involves:

Notice [that] *may* be given conditional upon the occurrence or nonoccurrence of an event, such as the renewal of a major contract, *only when the event is definite* and the consequences of its occurrence or nonoccurrence will necessarily, in the normal course of business, lead to a covered plant closing or mass layoff less than 60 days after the event.

20 C.F.R. § 639.7 (emphasis added).

In reply, Defendants direct the Court's attention to *Loehrer v. McDonnell Douglas Corp.*, where the United States Court of Appeals for the Eighth Circuit rejected the exact argument being made by Plaintiffs here:

The former employees have also argued that McDonnell Douglas, at some earlier time, should have given them conditional notice. The regulations permit conditional notice where the occurrence or nonoccurrence of some future event, which is certain to transpire, will necessarily lead within sixty days to a plant closing or mass layoff. 20 C.F.R. § 639.7(a)(3) (1996). To be sure, if the regulatory prerequisites to the issuance of conditional notice are satisfied, it seems that an employer would in most situations be well-advised to undertake notification in order to fend off the prospect of liability. *It is clear, however, that a decision whether to give conditional notice is committed to an*

> *employer's discretion. See id.* ("Notice may be given conditional upon the occurrence or nonoccurrence of an event . . . ."). Therefore, even assuming that it would have been appropriate for McDonnell Douglas to distribute conditional notice in the instant case, cf. 54 Fed. Reg. 16,059 (1989) ("Conditional notice is permitted only if there is a definite event . . . ."), *a failure to circulate conditional notice cannot, in itself, justify the imposition of WARN liability*, *see id.* ("The regulations specify that conditional notice is optional to avoid the problem of imposing liability on employers for failing to give a conditional notice.").

98 F.3d 1056, 1063 n.9 (8th Cir. 1996) (emphasis added). Further, "the regulations frown upon the concept of a 'rolling notice'" being imposed by the regulations upon employers. *Chestnut v. Stone Forest Indus., Inc.*, 817 F. Supp. 932, 938 (N.D. Fla. 1993).

The regulation unambiguously allows conditional notice as an optional measure for employers to attempt to avoid litigation. Moreover, looking back sixty days prior to the mass layoff, there is no evidence in the record regarding any definite event upon which Faurecia could have relied to issue such conditional notice: Chrysler had not yet filed for bankruptcy at that point, and there is no evidence in the record that Faurecia should have known Chrysler's bankruptcy was impending. Further, Plaintiffs' own representations — "even if Faurecia was unaware of when . . . *or even if [bankruptcy] would happen*"— illustrate that the bankruptcy at issue here was not a "definite" event, as required by 20 C.F.R. § 639.7.

Thus, the Court concludes that Defendant Faurecia was under no duty to issue a conditional notice. Therefore, the Court finds that there is not a genuine issue of material fact as to whether Chrysler's bankruptcy on April 30, 2009 was foreseeable in a manner requiring issuance of a conditional notice.

Having provided no genuine issue of material fact as to the applicability of the "unforeseeable business circumstances" exception to the WARN Act, the Court finds that

Plaintiffs have not met their burden of production to survive Defendant Faurecia's motion for summary judgment.

IV.     Conclusion

Defendant's motion, doc. 19, is **GRANTED** with regard to Plaintiffs' WARN Act claims and summary judgment is awarded in favor of Defendant and against Plaintiffs on the WARN Act claim. The Court's finding that Plaintiffs only claims under federal law is not viable deprives the Court of Plaintiffs' asserted foundation for subject matter jurisdiction. Although several of the state law counts over which the Court had jurisdiction pursuant to 28 U.S.C. § 1367 may have been properly asserted, a court may decline such supplemental jurisdiction where the court has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3). The Court declines to exercise its supplemental jurisdiction over these matters, because these supplemental claims arise out of a different set of circumstances than Plaintiffs' WARN Act allegation, and because they are better addressed by an Ohio state court, as they are based in Ohio state contract and tort law. Therefore, Plaintiffs' **STATE LAW CLAIMS** are **DISMISSED WITHOUT PREJUDICE** to refiling in state court.

Accordingly, Motion of Defendant Faurecia Exhaust Systems, Inc. for Summary Judgment, Doc. 19, is **GRANTED IN PART**. The instant case is **TERMINATED** from the docket of the United States District Court for the Southern District of Ohio, Western Division.[2]

**DONE** and **ORDERED** in Dayton, Ohio, this Friday, July 13, 2012.

s/Thomas M. Rose
_____

---

[2] The Court acknowledges the valuable contribution and assistance of judicial extern Matthew H. Walker in drafting this opinion.

THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE